DAVID R. FARBSTEIN, P.A.,
and DAVID R. FARBSTEIN,

       Plaintiffs/Counter-Defendants,

v.

WESPORT INSURANCE CORPORATION,

       Defendant/Counter-Plaintiff,

_____/

WESTPORT INSURANCE CORPORATION,

       Third Party Plaintiff,

v.

CARAVAN, INC.,

       Third Party Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

    **THIS CAUSE** is before the Court upon Plaintiffs David R. Farbstein, P.A. and David R. Farbstein ("Plaintiffs") Motion for Partial Summary Judgment Regarding Defendant's Duty to Defend, ECF No. [30] ("Plaintiff's Motion"), and Defendant/Counter-Plaintiff/Third-Party Plaintiff Westport Insurance Corporation's ("Westport") Motion for Summary Judgment, ECF No. [37], ("Westport's Motion") (collectively, the "Motions"). The Court has carefully reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is

otherwise fully advised. For the reasons that follow, Westport's Motion is granted and Plaintiffs' Motion is denied.

## I.   BACKGROUND

### A.  The Underlying Lawsuit

On March 7, 2016, Third-Party Defendant, Caravan, Inc. ("Caravan") filed a Verified Complaint (the "underlying complaint") against David R. Farbstein ("Farbstein") in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, Case No. 2016 CA 002459 (AF) ("the underlying lawsuit"). *See* ECF No. [30-1]; ECF No. [30] at ¶ 4. In the underlying lawsuit, Caravan alleges that on or about March 15, 2015, it began to negotiate a contract for the sale of real property known as the Hatteras apartments. *See* ECF No. [30-1] at ¶ 7; ECF No. [30] at ¶ 4. The existing mortgage on the Hatteras apartments contained a pre-payment penalty. *See* ECF No. [30-1] at ¶ 9; ECF No. [30] at ¶ 5. The underlying complaint further alleges that, on March 30, 2015, Caravan retained Farbstein to represent it in the sales transaction *and* the negotiation of the sales contract, including negotiating a deal by which Caravan would not pay the pre-payment penalty on the mortgage. *See* ECF No. [30-1] at ¶ 10; ECF No. [30] at ¶ 5. Prior to retaining Farbstein, Caravan allegedly emphasized that it would only sell the property if the purchaser would either (1) assume the existing mortgage or (2) pay the pre-payment penalty. *See* ECF No. [30-1] at ¶ 11. Caravan states that Farbstein provided assurances that, as part of his representation, he would indeed negotiate these terms into the sales contract. *Id.* at ¶ 12. Approximately two to three weeks before the July 21, 2015 closing, it was discovered that the sales contract did not require the purchaser to assume the mortgage or pay the penalty. *Id.* at ¶ 16. After this discovery but before the closing, Caravan and Farbstein specifically discussed this situation and Farbstein counseled Caravan to close on the deal because, otherwise, Caravan

would be sued for specific performance and would lose. *Id.* at ¶ 17. Based on this advice, Caravan alleges that it closed on the transaction and paid a penalty totaling $482,604.94. *Id.* at ¶¶ 15 and 17. Also during this conversation, Caravan alleges that Farbstein "made reference to [his] errors and omissions policy." *Id.* at ¶ 18. Based on these allegations, Caravan filed a negligence claim against Farbstein, alleging he knew or should have known that the purchaser could buy the Hatteras apartments with a new mortgage and was under no obligation to assume the existing mortgage or otherwise pay the penalty. *Id.* at ¶ 20. Despite allegedly knowing that the buyer had none of these obligations, Caravan alleges that Farbstein indicated otherwise. *Id.* at ¶ 21.

### B. The Insurance Application

Approximately one month after the closing on the Hatteras apartments, on August 26, 2015, Farbstein completed and signed the Westport Renewal Application, a lawyers professional liability insurance renewal application for a claims-made and reported policy. *See* ECF No. [38-2]; ECF No. [30] at ¶ 12; ECF No. [38] at ¶ 5. Farbstein answered "no" to the following two questions:

> 15. During the current policy year have any claims or suits been made against the applicant, its predecessor firms or any individual proposed for this insurance and not previously reported to the carrier?
>
> 16. Is the applicant, its predecessor firms or any individual proposed for this insurance aware of any circumstance, act, error, omission or personal injury which might be expected to be the basis of a legal malpractice claim or suit that has not previously been reported to the carrier?

*Id.* The application, which Farbstein signed, states: "this application and any supplements executed in support of this application shall become the basis of any coverage to be issued by Westport Insurance Corporation." *See* ECF No. [38-2]; ECF No. [38] at ¶ 6. Thereafter, on October 5, 2015, Farbstein signed a Warranty Statement, which states in part:

This is to acknowledge that I/we am/are not aware of any claim and/or any circumstances, acts, errors or omissions that could result in a professional liability claim.

This will also certify that to the best of my/our knowledge, the information given on the Westport application is unchanged since it was completed on 08/26/15, including supplemental information provided.

ECF No. [38-3]; ECF No. [38] at ¶ 7.

### C. The Insurance Policy

On October 12, 2015, Westport issued a claims-made and reported Lawyers Professional Liability Policy to David R. Farbstein, P.A., policy number WLA308002841311 and renewal of policy number WLA308002841310, with a policy period commencing October 12, 2015 and ending on October 12, 2016 (the "Policy"). *See* ECF No. [30] at ¶ 14; ECF No. [30-3]; ECF No. [38] at ¶¶ 1 and 2; and ECF No. [38-1]. The Policy, in pertinent part, covers the following:

    I.      INSURING AGREEMENTS

        A.  The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any alleged WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any.

ECF No. [30] at ¶ 14; ECF No. [30-3] at 12.

The Policy also states the following with regard to its duty to defend:

    B.  DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS

      As respects such insurance as is afforded by this POLICY:

        A.  The Company shall have the right and duty to select counsel and arbitrators and to defend any CLAIM for LOSS against any INSURED covered by Section I Insuring Agreement A, even if such CLAIM is groundless, false or fraudulent, and shall have the right to make such investigation, negotiation and settlement, subject to Section V,

CONDITIONS C2 below, of any CLAIM as it deems expedient. If no coverage exists for the CLAIM, the Company shall have the right to recover from the NAMED INSURED any LOSS paid and/or CLAIMS EXPENSES paid to defend the CLAIM.

ECF No. [30] at ¶ 14; ECF No. [30-3] at 19.

The central issue in this action involves the application of the following exclusion (the "prior-knowledge exclusion") contained within the Policy:

IV. EXCLUSIONS

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

. . .

B. Any WRONGFUL ACT occurring prior to the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED if (a) the WRONGFUL ACT had previously been reported to any other insurance company or (b) if the INSURED at the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.

ECF No. [30] at ¶ 15; ECF No. [30-3] at 17; ECF No. [38] at ¶ 4.

The Policy also defines the terms "CLAIM" and "WRONGFUL ACT," in relevant part, as follows:

III. DEFINITIONS

As respects such insurance as is afforded by this POLICY, the following definitions shall apply:
. . .

C. 'CLAIM' MEANS:

1. A demand made upon any INSURED for LOSS including, but not limited to, service of suit, or institution of arbitration proceedings or administrative proceedings against any INSURED; or

    2. A request for any INSURED to toll or waive a statute of limitations.

. . .

X. 'WRONGFUL ACT' MEANS:

    1. any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of PROFESSIONAL SERVICES for other . . .

ECF No. [30] at ¶ 16; ECF No. [30-3] at 13 and 16.

### D. The Denial of Coverage

After receiving a copy of the underlying complaint, on March 20, 2016, Plaintiffs notified Westport of the underlying lawsuit. *See* ECF No. [30] at ¶ 17; ECF No. [38] at 10. Westport thereafter mailed Plaintiffs a letter invoking the prior-knowledge exclusion, quoted above, and denying coverage. *See* ECF No. [30] at ¶ 17; ECF No. [30-4]; ECF No. [38] at ¶ 10. In doing so, Westport denied Plaintiffs both a defense and indemnity for the claims. *See* ECF No. [30-4] at 6.

### E. The Declaratory Action

On August 25, 2016, Plaintiffs filed a Complaint against Westport in the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE 16-015714. *See* ECF No. [1-2]. Westport thereafter removed the action to the Southern District of Florida. *Id.* Within the Complaint, Plaintiffs seek a declaration that, under the Policy, Westport has the duty to defend and indemnify them against the claims in the underlying lawsuit (Count I) and a finding that Westport's denial of coverage constitutes a breach of the insurance contract (Count II). *Id.* Westport, in turn, filed a Counterclaim against Plaintiffs and a Third-Party Claim against Caravan, seeking a declaration that, under the Policy, it does not owe Plaintiffs a duty to defend or a duty to indemnify them for the claims pled in the underlying lawsuit. *See* ECF No. [15].

Plaintiffs filed their Motion for Partial Summary Judgment, seeking a declaration that Westport has a duty to defend them under the Policy. *See* ECF No. [30]. Westport, in turn, filed its own Motion for Summary Judgment on all claims. *See* ECF No. [37]. Plaintiffs and Westport filed timely Responses and Replies. *See* ECF Nos. [33], [34], [39], [48], [49], and [50]. Third-Party Defendant, Caravan, did not respond or otherwise oppose Westport's Motion even though it encompasses the Third-Party Claims pled against Caravan.[1]

## II. LEGAL STANDARD

The parties have filed and briefed cross-motions for summary judgment on the same legal issue – whether Westport owes Plaintiffs a duty to defend and indemnify them for the claims alleged in the underlying lawsuit. A district court applies the same legal standards when ruling upon cross-motions for summary judgment as it does when only one party files a motion. *See Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." *Id.* (quoting *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 ((N.D. Ga. 2014)).

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] The Court notes that Caravan's Answer and Affirmative Defenses to the Third-Party Complaint states in part:

> Moreover, Westport is seeking a declaratory judgment as to whether or not it has to defend and/or indemnify Farbstein. That is clearly a dispute between Westport and Farbstein. Whether or not Westport is obligated to provide a defense and/or indemnify Farbstein is based on a contractual relationship between Westport and Farbstein. Caravan is not a party to such contract, is not a necessary party in the dispute between Westport and Farbstein and should not be forced to be involved in the dispute between Westport and Farbstein. . . . Therefore, Caravan should not be forced to litigate its case in both State Court and Federal Court and should be dismissed from the Federal Court Lawsuit.

ECF No. [29].

law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories,

and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III. DISCUSSION

Moving for partial summary judgment, Plaintiffs ask the Court to find that Westport has a duty to defend them from Caravan's claims in the underlying lawsuit. *See* ECF No. [30]. However, Plaintiffs ask the Court to defer any decision on the duty to indemnify until the proceedings in the underlying lawsuit are finalized. *Id.* at 2, n. 1. Westport, on the other hand, seeks summary judgment on all issues, asking the Court to find that it neither has a duty to defend nor a duty to indemnify Plaintiffs. *See* ECF No. [37]. Because the parties filed cross-motions for summary judgment on overlapping issues, the Court will address the Motions together.

### A. Interpretation of an Insurance Policy

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Pac. Emp'rs Ins. Co. v. Wausau Bus. Ins. Co.*, No. 3:05-cv-850-J-32TEM, 2007 WL 2900452, at *4 (M.D. Fla. Oct. 2, 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)). As with all contracts, the interpretation of an insurance contract – including determining whether an insurance provision is ambiguous – is a question of law to be determined by the

court.  *Id.*; *Travelers Indem. Co. of Illinois v. Hutson*, 847 So. 2d 1113 (Fla. 1st DCA 2003) (stating that whether an ambiguity exists in a contract is a matter of law).

Further, "[u]nder Florida law, insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).  The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties-not a strained, forced or unrealistic construction."  *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)); *see also Gilmore v. St. Paul Fire & Marine Ins.*, 708 So. 2d 679, 680 (Fla. 1st DCA 1998) ("The language of a policy should be read in common with other policy provisions to accomplish the intent of the parties.").  However, if there is more than one reasonable interpretation of an insurance policy, an ambiguity exists and it "should be construed against the insurer." *Pac. Emp'rs Ins.*, 2007 WL 2900452 at *4 (citing *Purelli v. State Farm Fire & Cas. Co.,* 698 So. 2d 618, 620 (Fla. 2d DCA 1997)).

A coverage clause is generally interpreted as broadly as possible to ensure the greatest amount of insurance coverage.  *Id.* at *5 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 5th DCA 1997)).  To determine the parties' contractual intent, a court may only consider the language in the insurance policy, unless the policy is ambiguous.  *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 854 F.2d 1264, 1267 (11th Cir. 2001) (citing *Towne Realty v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1267 (11th Cir. 1988)).  "As a general rule, in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic

evidence." *Id.* (quoting *Lee v. Montgomery*, 624 So. 2d 850, 851 (Fla. 1st DCA 1993)). "Although the insured bears the burden of proving that a claim is covered by the insurance policy, the 'burden of proving an exclusion to coverage is . . . on the insurer.'" *Diamond State Ins. Co. v. Boys' Home Assoc., Inc.*, 172 F. Supp. 3d 1326, 1334 (M.D. Fla. 2016) (omissions in original) (quoting *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997)).

### B. Duty to Defend

The threshold issue in this case is whether Westport owes Plaintiffs a duty to defend them from Caravan's claims in the underlying lawsuit. Westport has denied coverage, including the duty to defend and the duty to indemnify, on the basis of the Policy's prior-knowledge exclusion. More specifically, Westport argues that, at the inception of the Policy, Farbstein knew or could have reasonably foreseen that his representation of Caravan in the sale of the Hatteras apartments might be expected to be the basis of a claim. Not surprisingly, Plaintiffs take the opposite view and contend that, at the inception of the Policy, Farbstein did not know and could not have reasonably foreseen the claim. To resolve this issue, the Court must first undertake a review of the applicable standard when analyzing an insurer's duty to defend.

"Under Florida law, the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 204) (citing *Amerisure Ins. Co. v. Gold Coast Marine Distrib., Inc.*, 771 So. 2d 579, 580-81 (Fla. 4th DCA 2000)). This holds true regardless of whether the allegations are later revealed to be false or even if they seem fraudulent on their face. *Kopelowitz v. Home Ins. Co*., 977 F. Supp.

1179, 1185 (S.D. Fla. 1997) (citing *Smith v. Gen. Accident Ins. Co. of Am.*, 641 So. 2d 123, 123 (Fla. 4th DCA 1994) and *St. Paul Fire & Marine Ins. v. Icard*, 196 So. 2d 219 (Fla. 2d DCA 1967)); *see also Diamond State*, 172 F. Supp. 3d at 1335 ("The actual facts of the situation are not relevant, such that 'the insurer must defend even if facts alleged are actually untrue or legal theories unsound.'") (quoting *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)).

Courts in Florida will typically analyze the duty to defend by comparing the coverage afforded under the policy to the allegations in the underlying complaint. *See Feldman v. Imperium Ins. Co.*, No. 8:14-cv-1637-T-30EAJ, 2015 WL 5854153, at *7 (M.D. Fla. Oct. 5, 2015). Upon a review of the underlying complaint, if the allegations state facts that bring the claim within the policy's coverage, the insurer is required to defend the insured regardless of the claim's merits. *State Farm*, 393 F.3d at 1230. All doubts relating to the duty to defend must be resolved in the insured's favor. *Id.* When the underlying complaint "contains allegations partially within and partially outside the scope of coverage, the insurance carrier is required to defend the entire suit." *Tropical Park, Inc.*, 357 So. 2d at 256; *see also McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Assoc.*, 758 So. 2d 692, 695 (Fla. 4th DCA 2000) ("[A]n insurer must defend a lawsuit against its insured if the underlying complaint, when fairly read, alleges facts which create potential coverage under the policy.").

Here, Plaintiffs ignore the allegations of the underlying complaint and instead submit extrinsic evidence in the form of deposition transcripts and an affidavit to support their Motion without addressing why such evidence should be considered in deciding Westport's duty to defend. Curiously, Plaintiffs repeatedly cite to Florida law stating that the duty to defend must be based solely on the underlying complaint and criticize Westport for its submission of extrinsic

evidence. *See* ECF No. [48] at 2. However, Plaintiffs' Motion is devoid of any analysis of the underlying allegations. *See* ECF Nos. [30] and [39]. Westport similarly supplies the Court with deposition testimony, discovery responses, and Farbstein's Answer in the underlying lawsuit to support its position, asking the Court to find that exceptional circumstances warrant the consideration of such evidence.[2] *See* ECF No. [34] at 8-9. The parties' focus on extrinsic evidence - matters beyond the Policy and the underlying complaint - is unnecessary and inapposite to the analysis that is required by the Court. *See Kopelowitz*, 977 F. Supp. at 1188 ("[I]t is the allegations of the Third Amended Complaint that govern, not the interpretations of the parties or even the underlying facts which may or may not support those allegations.")

While it is true that Florida's courts have considered extrinsic evidence when analyzing the duty to defend, such consideration of matters beyond the underlying complaint have occurred only under rare circumstances. *See Feldman*, 2015 WL 5854153 at *7 (analyzing the limited occasions on which Florida's appellate courts have considered evidence extrinsic to the underlying complaint in a duty-to-defend analysis); *Diamond State*, 172 F. Supp. 3d at 1339 (same). The Eleventh Circuit has cautioned that consideration of such evidence should be "reserved for 'special circumstances' in which extrinsic 'facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage.'" *Feldman*, 2015 WL 5854153 at *8 (quoting *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323-24 (11th Cir. 2014)). Such evidence can be considered when analyzing the prior-knowledge exclusion only if the underlying complaint does not contain the facts relevant to whether the insured knew of the alleged wrongful act prior to the inception of the policy. *See*

---

[2] In its Response, Westport *anticipates* an argument that Plaintiff *may* raise in its Reply relating to paragraph 18 of the underlying complaint, stating that if such an argument is made, the Court should consider matters beyond the underlying complaint. *See* ECF No. [34]. Plaintiffs, however, made no such argument about paragraph 18 in their Reply or in their Response to Westport's Motion. *See* ECF Nos. [39] and [48].

*Diamond State*, 172 F. Supp. 3d at 1340 ("While the general rule is that the duty to defend is based solely on the underlying complaint, an exception arises where that pleading would not be expected to disclose the facts necessary to determine the duty to defend") (quoting *Composite Structures Inc. v. Cont'l Ins. Co.*, 903 F. Supp. 2d 1284, 1285 (M.D. Fla. 2012)).

The Court's review of the underlying complaint, however, reveals that the necessary facts to determine the applicability of the prior-knowledge exclusion are present. The pleading contains allegations regarding the relationship between Caravan and Plaintiffs, how the events involving the sales contract unfolded, and the precise moment when Plaintiffs were on notice of a potential malpractice issue as explained below. The only fact not addressed in the underlying complaint that is germane to the exclusion is the date of the closing on the Hatteras apartments – a date to which both parties stipulated as July 21, 2015. *See* ECF No. [30] at ¶ 9; ECF No. [33] at ¶ 9. Thus, the Court declines to consider any other evidence submitted extrinsic to the underlying complaint as all other facts necessary to analyze the prior-knowledge exclusion are already present within the pleading.

Turning the focus to whether Westport owes Plaintiffs a defense, the Court must now apply the prior-knowledge exclusion to the allegations of the underlying complaint.[3] The exclusion provides as follows:

IV. EXCLUSIONS

> This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
> . . .
> D. Any WRONGFUL ACT occurring prior to the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED if (a) the WRONGFUL

---

[3] Plaintiffs rely upon numerous decisions that either do not apply Florida law or do not draw a distinction between the duty to defend and the duty to indemnify in their analysis. To the extent these cases do not follow Florida's rules of insurance policy interpretation or do not focus on the specific standard required to determine an insurer's duty to defend, the Court does not find the analysis persuasive as applied to the specific issues raised by the Motions.

> ACT had previously been reported to any other insurance company or (b) if the INSURED at the effective date of the POLICY PERIOD for this lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM.

ECF No. [30] at ¶ 15; ECF No. [30-3] at 17; ECF No. [38] at ¶ 4.

As a preliminary matter, the Court finds that the language of the prior-knowledge exclusion is not ambiguous. Plaintiff does not argue that the language is ambiguous and many courts interpreting substantially similar policy language have deemed it unambiguous. *See Diamond State*, 172 F. Supp 3d at 1337; *Feldman*, 2015 WL 5854153 at *6, *Cuthill & Eddy LLC v. Cont'l Cas. Co.*, 784 F. Supp. 2d 1331, 1337 (M.D. Fla. 2011). To trigger the prior-knowledge exclusion, the underlying complaint must show one of two circumstances: (1) "the insured 'knew' that a wrongful act might be expected to be the basis of a claim;" or (2) "the insured 'could have reasonable foreseen' that a wrongful act might be expected to be the basis of a claim.'" *Feldman*, 2015 WL 5854153 at *6. The first circumstance applies a subjective test by requiring that the insured have actual knowledge. *Id.* (citing *Fid. Nat'l Title Ins. Co. v. Houston Cas. Co.*, No. 6:11-cv-1438, 2012 WL 4523666, at *5 (M.D. Fla. Sept. 30, 2012)). The second circumstance contains objective and subjective components by inquiring whether the insured "could have reasonably foreseen that a wrongful act might be expected to be the basis of a claim" (objective) and by requiring that this be based on facts known to the insured (subjective). *Id.; see also Diamond State*, 172 F. Supp. 3d at 1337 (applying same test); *Corregis Ins. Co. v. McCollum*, 961 F. Supp. 1572, 1579 (M.D. Fla. 1997) (emphasis in original) ("[T]he exclusion states that coverage will not be afforded if at the effective date any insured under the policy knew or *could have reasonably foreseen any claim* arising out of any act, error, omission or personal injury that might be expected to be the basis of a claim or suit."). "In no way does the exclusion require that such a claim have merit or that the insured reasonably believed it to have

merit." *Id.* Stated another way, the Court must determine whether, at the inception of the Policy, Farbstein knew that he committed a "wrongful act" that might result in Caravan's claim or that he could have reasonably foreseen that he committed a "wrongful act" that might be expected to be the basis of the claim.

Focusing on the pertinent allegations of the underlying complaint, they state as follows:

10. On or about March 30, 2015, the Plaintiff retained the Defendant, DAVID R. FARBSTEIN, ESQ. to represent the Plaintiff in the sale of the Subject Property. As part of his representation the Defendant, *inter alia*, was to:
    a. negotiate the Sales Contract on behalf of the Plaintiff;
    b. make certain the Plaintiff did not have to pay the foregoing mentioned Pre-Payment Penalty; and
    c. represent the Plaintiff throughout the sale of the Subject Property.

11. Prior to the Plaintiff retaining the Defendant as their attorney in the sale of the Subject Property, the Plaintiff emphasized and stressed to the Defendant that they would only sell the Subject Property if the Buyer of the Subject Property would either:
    a. one, assume the Existing Mortgage; or
    b. two, pay the Pre-Payment Penalty.

12. The Defendant represented to the Plaintiff that the Defendant fully understood the Plaintiff's conditions of sale and the Defendant assured the Plaintiff that as part of his representation of the Plaintiff the Defendant would be certain to negotiate the Sales Contract such that the Buyer of the Subject Property would have to either:
    a. one, assume the Existing Mortgage; or
    b. two, pay the Pre-Payment Penalty.

. . .

14. Notwithstanding the Defendant's assurances that he would make certain that the Sales Contract would contain the aforementioned conditions, the Defendant failed to do so.

15. Because of the Defendant's failure to do so, at closing of the Subject Property the Plaintiff had to pay the Pre-payment Penalty which totaled $482,604.94.

16. Approximately two (2) to three (3) weeks prior to the closing on the Subject Property, it was discovered that the Buyer did not have to assume the Existing Mortgage or pay the Pre-Payment Penalty as the Defendant had represented to Plaintiff.

17. After it was discovered that the Buyer did not have to assume the Existing Mortgage, nor did the Buyer have to pay the Pre-Payment Penalty, the Plaintiff discussed the situation with the Defendant. The Defendant responded by telling the Plaintiff that if the Plaintiff did not close the Buyer would sue the Plaintiff for specific performance and the Plaintiff would lose. Based upon the Defendant's advice to the Plaintiff, the Plaintiff closed the transaction and paid the Pre-Payment Penalty.

18. During the conversations between the Plaintiff and the Defendant regarding the Pre-Payment Penalty, the Defendant made reference to the Defendant's errors and omissions policy.
. . .

ECF No. [30-1].

Based upon the Court's review of the above allegations, it concludes that the underlying complaint alleges facts invoking the prior-knowledge exclusion. Indeed, the pleading asserts that (1) Farbstein was retained to ensure that Caravan would not be required to pay the pre-payment penalty under the existing mortgage encumbering the Hatteras apartments; (2) Farbstein agreed that he would negotiate a sales contract in which the purchaser would either be required to assume the existing mortgage or pay the pre-payment penalty; (3) Farbstein failed to negotiate a sales contract containing either of those terms; (4) upon the discovery of the error, Caravan and Farbstein discussed the purchaser's lack of an obligation to pay the pre-payment penalty or to assume the mortgage, (5) during this conversation, Farbstein counseled Caravan to go forward with the closing anyway, (6) also during this conversation with Caravan, Farbstein made reference to his errors and omissions insurance policy, and (7) based upon Farbstein's advice, Caravan went forward with the closing and incurred the penalty in the amount of $482,604.94 – a penalty that, according to the underlying complaint, Farbstein was retained to prevent Caravan from incurring in the first place. All of the foregoing allegedly occurred on or before the undisputed closing date of July 21, 2015. Thus, as of this date, the Court finds that, according to

the underlying complaint, Farbstein knew he failed to negotiate the required terms into the sales contract, causing Caravan to allegedly incur significant damages. Based on these allegations of Farbstein's knowledge, Farbstein could have reasonably foreseen that the alleged error might be expected to be the basis of a claim by Caravan.[4]

To trigger the exclusion, Farbstein must have had such knowledge prior to the effective date of the Policy. It is undisputed that Farbstein signed the insurance application on August 26, 2015, that he signed the Warranty Statement, in which he verified the accuracy of his application, on October 5, 2015, and that Westport issued the Policy to Plaintiffs on October 12, 2015. According to the underlying complaint, Farbstein could have reasonably foreseen a claim no later than the closing date of July 21, 2015 – one month before he filled out the insurance application and more than two months before the effective date of the Policy. As such, the Court finds that the prior-knowledge exclusion applies to this claim.

Recognizing, as Plaintiffs point out, that Westport may have a duty to defend if the underlying complaint contains covered and uncovered claims, the Court has considered whether the pleading contains any other claims that may be otherwise covered by the Policy. *See Tropical Park, Inc.*, 357 So. 2d at 256 (stating that when the underlying complaint "contains allegations partially within and partially outside the scope of coverage, the insurance carrier is required to defend the entire suit."). Caravan's only claim, however, arises from Farbstein's

---

[4] Unlike the *Feldman* and *Diamond State* decisions, upon which Plaintiffs rely, in which the underlying complaint did not contain any allegations relating to the insured's knowledge of the alleged wrongful act prior to the inception of the policy, the underlying complaint filed by Caravan contains such allegations, making these cases distinguishable. *Feldman*, 2015 WL 5854153 at *7 (finding that the underlying complaint was devoid of any facts indicating that, prior to the policy's effective date, the insureds knew or could have foreseen that the alleged breach might be the basis of a claim or that the insureds were aware, at any time, that they breached a duty); *Diamond State*, 172 F. Supp. 3d at 1338 ("The State Complaint reveals nothing about whether anyone at Boys' Home knew, at that time, of its purported investigative failures, or that its initial decision to license Smith may have been improper based on Smith's background).

alleged failure to negotiate terms into the sales contract requiring that the purchaser either assume the existing mortgage or pay the pre-payment penalty. Because Caravan did not plead any other claims of negligence against Farbstein and the only claim pled falls within the scope of the exclusion, Westport does not owe Plaintiffs a defense in the underlying lawsuit.

### C. Duty to Indemnify

In its Motion, Westport also asks the court to enter summary judgment in its favor on the duty to indemnify. In response, Plaintiffs argue that it would be premature to decide the duty to indemnify when the underlying lawsuit is still ongoing. The Court must, therefore, determine whether the duty to indemnify can be determined at this juncture.

"An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case." *Sinni v. Scottsdale Ins. Co.*, 676 F. Supp. 2d 1319, 1323 (M.D. Fla. 2010) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998) and *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)). "The duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims by some other means." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citing *Travelers Ins. Co. v. Waltham Indus. Lab. Corp.*, 883 F.2d 1092, 1099 (1st Cir. 1989)). If the insured can show that it did not suffer a covered loss, then there is no duty to indemnify. *Id.* "Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim." *Id.* (citing *Bankwest v. Fid. & Deposit Co. of Md.*, 63 F.3d 974, 981-82 (10th Cir. 1995)).

There is, however, one exception to this general rule: "if the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify" then the court can assess the duty prior to the conclusion of the underlying lawsuit. *Id.; see also IDC Construc., LLC v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1351 (S.D. Fla. 2004) (same). Put another way, "'a court's determination that the insurer has no duty to defend *requires* a finding that there is no duty to indemnify.'" *Mt. Hawley Ins. Co. v. Miami River Pt. Terminal, LLC*, 228 F. Supp. 3d 1313, 1326 (S.D. Fla. 2017) (emphasis in original) (quoting *Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) and collecting cases holding that without a duty to defend, there cannot be a duty to indemnify). In light of the Court's finding that Westport does not owe Plaintiffs a duty to defend and Florida's well-settled principle that there cannot be a duty to indemnify without a duty to defend, the Court has little difficulty concluding that Westport does not have a duty to indemnify Plaintiffs from any judgments, settlements, or damages arising out of Caravan's claim.

## IV.     CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs' Motion for Partial Summary Judgment Regarding Defendant's Duty to Defend, **ECF No. [30]**, is **DENIED**;

2.  Westport's Motion for Summary Judgment, **ECF No. [37]**, is **GRANTED**;

3.  Addressing Count I of Plaintiffs' Complaint and Westport's Counterclaim/Third-Party Claim, both of which seek a declaratory judgment regarding Westport's duty to defend and indemnify, the Court declares that, under the Policy:

    a.  Westport has no duty to provide Plaintiffs a defense for the claims asserted in *Caravan, Inc. v. David R. Farbstein, Esq.*, Case No. 2016 CA

002459 (AF) pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida and

b. Westport has no duty to indemnify Plaintiffs for any damages, settlements, or judgments arising from the claims asserted in *Caravan, Inc. v. David R. Farbstein, Esq.*, Case No. 2016 CA 002459 (AF) pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

4. Addressing Count II of Plaintiff's Complaint for breach of contract, the Court finds that Westport properly denied Plaintiffs a defense and indemnity for the claims asserted in *Caravan, Inc. v. David R. Farbstein, Esq.*, Case No. 2016 CA 002459 (AF) pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida and did not, therefore, breach the contract of insurance.

5. The Court will issue final judgment by separate order.

**DONE AND ORDERED** in Miami, Florida this 9th day of August, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record